1

2

3 UNITED STATES DISTRICT COURT

4 NORTHERN DISTRICT OF CALIFORNIA

5

6 MONICA REED,

                Plaintiff,

7

     v.

8

9 CAROLYN W. COLVIN,

                Defendant.

10

Case No.  14-cv-00547-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 19

11

12 **INTRODUCTION**

13       Plaintiff Monica Reed ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

14 seeking judicial review of a final decision of Defendant Carolyn W. Colvin, the Acting

15 Commissioner of Social Security, denying Plaintiff's claim for disability benefits.  Pending before

16 the Court are the parties' cross-motions for summary judgment.  Dkt. Nos. 15 and 19.  Pursuant to

17 Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.

18 Having carefully reviewed the parties' positions, the Administrative Record ("AR") in this case,

19 and relevant legal authority, the Court hereby GRANTS Plaintiff's motion and DENIES the

20 Commissioner's cross-motion for summary judgment for the reasons set forth below.

21 **BACKGROUND**

22 **A.    Introduction**

23       Plaintiff, a 50 year old African American female, was diagnosed with colon cancer in

24 2010.  AR 232.  Plaintiff underwent surgery to remove the tumor and chemotherapy, during which

25 time she developed neuropathy and severe colonic dysfunction.  AR 35, 46, 50.

26 **B.    Stephen D. Weiss, M.D.**

27       On June 14, 2010, Dr. Weiss performed a laparoscopic colon resection for stage I colon

28 cancer, removing a tumor from Plaintiff's colon.  AR 232.  On August 11, 2010, Dr. Weiss noted

United States District Court
Northern District of California

1   that Plaintiff continued to complain of constipation.  AR 272.  On September 8, 2010, Dr. Weiss

2   again examined Plaintiff and noted that she had abdominal discomfort, without nausea or

3   vomiting.  AR 275.  On March 1, 2011, Dr. Weiss noted that Plaintiff had a large amount of

4   retained stool, though reported she has been "pretty regular every day."  AR 391.  Dr. Weiss

5   advised Plaintiff to take stool softeners twice daily, which she would probably need to do for life.

6   AR 391.  On April 19, 2011, Dr. Weiss reviewed the results from Plaintiff's most recent barium

7   enema and noted that her anastomosis was tighter than it should be, which he opined might be the

8   cause of her continued symptoms of abdominal pain.  AR 396.  On June 14, 2011, Dr. Weiss noted

9   that Plaintiff's bowel was not obstructed, and that there were no complications from her surgery

10  that would cause her constipation.  AR 401.  Dr. Weiss recommended Plaintiff see a

11  gastroenterologist and opined that the problem was functional.  AR 401.

12  **C.    Phillip Seu, M.D.**

13          On October 22, 2010, consultative examiner Philip Seu, M.D., performed a comprehensive

14  internal medicine examination of Plaintiff.  AR 236-39.  At the time of the examination, Plaintiff

15  was undergoing chemotherapy.  AR 236.  Dr. Seu diagnosed colon cancer and hypertension.  AR

16  239.  Dr. Seu noted that Plaintiff appeared "chronically ill," though she could walk, sit, stand, and

17  use her hands to take her shoes on or off without difficulty.  AR 237.  Dr. Seu opined that

18  Plaintiff's condition would not impose limitations for 12 continuous months, and would improve

19  after chemotherapy.  AR 239.  He also found that Plaintiff could stand or walk up to six hours in

20  an eight-hour work day, and that she did not require an assistive device for ambulation or

21  mobility.  AR 239.  Dr. Seu did notice that Plaintiff had some numbness in her right hand, but

22  believed it would improve over time after chemotherapy.  AR 239.

23  **D.    Lili Wang, M.D.**

24          Dr. Wang is Plaintiff's oncologist.  On August 24, 2010, Dr. Wang noted that Plaintiff was

25  having abdominal pain and nausea, which was helped by morphine.  AR 327.

26  **E.    Gerald Schaffer, M.D.**

27          In March 2011, Dr. Schaffer diagnosed peripheral neuropathy following chemotherapy.

28                                                  2

1    AR 392.  Dr. Schaffer also opined that Plaintiff might develop autonomic neuropathy from the

2    chemotherapy, involving the stomach.  AR 392.

3    **F.      Paul Reif, M.D.**

4           On June 22, 2011, Plaintiff saw Dr. Reif for a gastrointestinal consultation.  AR 402.  Dr.

5    Reif noted that Plaintiff was taking a number of constipating medications for her neuropathy and

6    blood pressure.  Dr. Reif also found that Plaintiff had no urge to defecate and no sensation that

7    there is stool in the rectum, suggesting the possibility of anorectal dysfunction.  AR 402.  Dr. Reif

8    recommended a sitzmark[1] study once Plaintiff was completely off of amitriptyline and verapamil.

9    Although there are no further records showing treatment by Dr. Reif, the September 12, 2012

10   progress notes of Dr. Cominos note that Plaintiff continued to receive testing and treatment:

11   Plaintiff saw Dr. Snape at CPMC, who recommended a colonoscopy and rectal manometry.  AR

12   550.

13   **G.      Sylvia Torrez, Psy.D.**

14          On September 18, 2011, consultative examiner Sylvia Torrez Psy.D., performed a

15   psychiatric examination of Plaintiff.  AR 502-07.  Dr. Torrez diagnosed Plaintiff with moderate

16   major depressive disorder, single episode, and assessed her GAF as 58-60.  AR 506.  Dr. Torrez

17   believed that Plaintiff had a fair likelihood of improving within 12 months.  AR 507.  Dr. Torrez

18   opined that Plaintiff's ability to accept instructions from a supervisor and respond appropriately

19   was fair, as was her ability to complete a normal workday/week without interruptions, interact

20   with co-workers, deal with changes in the work environment or setting.  AR 507.  The likelihood

21   of Plaintiff emotionally deteriorating in the work environment was also listed as fair.  AR 507.

22          During the examination, Plaintiff stated that she sees her doctor once or twice a month.

23   AR 503. Plaintiff also reported seeing a neurologist, gastroenterologist, OB/GYN, and a surgeon.

24   AR 503.

25

26

27   _____
     [1] This diagnostic test helps physicians evaluate the cause of severe constipation by observing the
     dispersal of radio-opaque markers through a patient's GI tract over time.

28                                                        3

United States District Court
Northern District of California

United States District Court
Northern District of California

**H.      Uwe Jacobs, PhD.**

On October 16, 2011, state psychiatric consultant, Uwe Jacobs, PhD., reviewed Dr. Torrez's conclusions and prepared a mental residual functional capacity assessment.  AR 510.  Dr. Jacobs opined, without citing any evidence for his findings that Plaintiff was markedly limited in the ability to interact appropriately with the general public.  AR 511.

**I.      Eve Danae Cominos, M.D.**

Dr. Cominos is Plaintiff's treating physician, who she saw approximately every three months.  *See* AR 276, 389, 397, 403.  On October 4, 2010, Dr. Cominos examined Plaintiff and noted that Plaintiff had begun FOLFOX chemotherapy, was feeling fatigued, and was suffering from significant constipation.  AR 276.   Plaintiff was scheduled for a follow-up in three months.  AR 276.  Plaintiff saw Dr. Cominos again on February 11, 2011 for treatment of a rash, and was directed to return for a follow-up in April.  AR 389.  On April 29, 2011, Plaintiff complained to Dr. Cominos that she is still having infrequent bowel movements, approximately once to twice weekly.  AR 397.  Plaintiff was scheduled for a colonoscopy with Dr. Weiss and directed to follow-up thereafter.  AR 400.  On July 13, 2011, Dr. Cominos removed a cyst from Plaintiff's axilla.  AR 403.

Although Plaintiff testified that she saw Dr. Cominos "regularly," the next record of treatment from Dr. Cominos is dated September 12, 2012.  AR 38, 549.  This progress note lists the following diagnoses: hypertension; menopause; stage IIIA colon cancer (sigmoid); chronic low back pain due to lumbar degenerative disc disease ("DDD") and degenerative joint disease ("DJD"); chronic constipation; obesity; obstructive sleep apnea; colonic dysmotility; hypocortisolemia; osteoarthritis and degenerative disc disease of the cervical spine; cubital tunnel syndrome; and bilateral carpal tunnel syndrome.  AR 549.  Dr. Cominos opined that

> Since surgery for colon cancer in 2010 she has had severe colonic dysfunction that prevents defecation for up to one month at a time. She currently is undergoing a work-up for this at Sutter Pacific Medical Center in San Francisco. This inability to defecate is likely a nerve problem due to surgery and causes unrelenting abdominal pain for [Plaintiff].  This pain is very debilitating and prevents [Plaintiff] walking, standing, lifting, or sitting for prolonged periods.

4

1    AR 549.

2         With respect to the severity of the cubital and carpal tunnel symptoms, Dr. Cominos

3    observed positive Tinnel's and Phalen's at Plaintiff's wrists and elbows, with greater symptoms in

4    ulnar distribution bilaterally suggested ulnar nerve entrapment.  AR 549, 551.  Based on these

5    observations, Dr. Cominos opined that Plaintiff was prevented from writing and keyboarding.  AR

6    549.

7         Dr. Cominos also noted that while Plaintiff had 5/5 motor strength in all of the proxital and

8    distal groups of her upper extremities, she had clinical signs of carpal and cubital tunnel, with 50%

9    hypoesthesia (numbness) on all digits of her right hand and 30% hypoesthesia on all but the little

10   finger of her left hand, which had 20% hypoesthesia.  AR 549.  Further, Plaintiff had 30%

11   hypoesthesia on her left forearm, and 50% on her right dorsal forearm.  AR 549.  Plaintiff also

12   experienced 30% hypoesthesia on the left distal neck, and marked bilateral myofascial trigger

13   points on the left side.  AR 550.

14        Dr. Cominos found that Plaintiff also had limited mobility in her back, with less than 10

15   degrees of extension, minimal lateral flexion, and minimal rotary motion.  AR 549.  Although

16   Plaintiff had "10 out of 10" with regard to motor strength in her lower extremities, she had

17   "marked hypoesthesia in the L5 and S1 dermatomes of the left foot."  AR 550.

18        Dr. Cominos also recommended further treatment and testing for Plaintiff's conditions.

19   AR 550.  Dr. Cominos noted that because Plaintiff had no relief with epidural steroid injections,

20   she was referring Plaintiff for surgery for her degenerative joint and disc disease of the lumbar

21   spine.  AR 550.  Dr. Cominos also referred Plaintiff for an EMG for her osteoarthritis and

22   degenerative disc disease of the cervical spine.  AR 550.  Dr. Cominos scheduled Plaintiff for

23   another appointment on October 1, 2012.  AR 550.  Plaintiff also had upcoming appointments

24   with her dermatologist and ophthalmologist.  AR 552.

25        Last, the progress notes state that Plaintiff saw Dr. Snape at CPMC, and that he would like

26   to perform a colonoscopy and rectal manometry.  AR 550.  Plaintiff is currently prescribed

27   fluoxetine by Dr. Keller for depression.  AR 552.

28                                        5

United States District Court
Northern District of California

### SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On June 28, 2010, Plaintiff filed a concurrent claim for Social Security and Disability Insurance Benefits, alleging disability beginning on May 20, 2010.  AR 16.  On November 24, 2010, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits.  AR 69-73.  Plaintiff subsequently filed a request for reconsideration, which was denied on November 4, 2011.  AR 79-83.  On December 19, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 84-85.  ALJ Amita B. Tracy conducted a hearing on September 13, 2012.  AR 30.  Plaintiff testified in person at the hearing and was represented by counsel, Michael Starkey.  The ALJ also heard testimony from Vocational Expert ("VE") Elizabeth Brown-Ramos.  AR 49-54.

**A.      Plaintiff's Representative**

Two days before the hearing, Plaintiff's counsel informed the Office of Disability Adjudication and Review ("ODAR") that he could not represent Plaintiff at her hearing due to a sudden personal emergency, and that no other attorneys from his firm were available.  AR 226.  As a result, an associate from another firm, Michel Starkey, would represent Plaintiff at the hearing via telephone.  AR 226.  Plaintiff's counsel advised ODAR that Plaintiff had agreed to this arrangement because she did not want to postpone her hearing.  AR 226.

Before commencing the hearing, the ALJ asked Starkey if the record was up to date, and whether counsel wished to submit any other records.  AR 34.  Counsel informed the ALJ that aside from the recent progress notes that Plaintiff submitted prior to the hearing, the record was up to date, and that she was not aware of any evidence that had not been submitted.  AR 33-34.

**B.      Plaintiff's Testimony**

Plaintiff was 50 years old at the time of the hearing.  AR 35.  She testified that she became disabled on May 20, 2010.  AR 35.  Plaintiff lived with her mother and sister, and had no children of her own.  AR 35.  The highest level of education she completed was her second year of college, although she did not earn an associate's degree.  AR 36.

At the time of the hearing, Plaintiff had not worked since 2007.  AR 36.  Between that

1    time, and the onset of her disability, Plaintiff testified that she was looking for work.[2]  AR 37.

2         Plaintiff testified that prior to being laid off in 2007, she worked as an admissions clerk in

3    a hospital emergency department.  AR 37.  Plaintiff testified that she stopped looking for work in

4    2010 because she was extremely ill, suffering from severe headaches, stomach pain, passing out

5    and inability to hold down food.  AR 37.  Plaintiff had surgery in June of 2010 to remove a

6    cancerous tumor from her colon.  AR 40.

7         Plaintiff testified that as a result of her condition, she regularly saw her primary care

8    physician, in addition to a neurologist, gastroenterologist, physical therapist, ophthalmologist,

9    dermatologist, and oncologist.  AR 38.  Plaintiff took a number of medications, which were

10   summarized on a two-page list provided as evidence at the hearing.  AR 38-39, 551-52.  Plaintiff

11   testified that some of the medications were not effective, and that they had several side effects.

12   AR 39.  Plaintiff identified these effects as: drowsiness, inability to operate machinery, tiredness,

13   weakness, fatigue, sleepiness, pain, "gastro" pain, and nerve pain.  AR 39.

14        Plaintiff also was attending physical therapy, which she testified was not helping.  AR 39.

15   She also had two epidurals, which did not help.  AR 40.  Nor did acupuncture, or cortisone shots

16   in her neck. AR 40.  Plaintiff testified that her doctor prescribed a cane in 2011, which she uses

17   all the time for balance.  AR 40, 46.

18        With regard to mental health, Plaintiff testified that she had been taking Prozac since 2011.

19   AR 40.  She was not receiving mental health counseling due to cuts in county benefits.  AR 41.

20   Plaintiff testified that the medication was not consistently helping her.  AR 41.

21        Plaintiff testified that she did not smoke, drink, or take drugs, and had no substance abuse

22   problems in her past.  AR 41.

23        Plaintiff described the pain in her body as "really severe."  AR 41.  She testified that she

24   had sciatic pain on her right side from her hip to her calf, with a tingling, burning sensation in both

25

26   [2] Plaintiff's treating physician noted that "[Plaintiff] has been unable to work since 2007 due to multiplicity of her medical problems" in the September 12, 2012 progress note.  AR 550.

27   However, as discussed below, this statement is inconsistent with Plaintiff's credible testimony, and Dr. Cominos' own medical records.

28

United States District Court
Northern District of California

of her hands and feet.  AR 41.  Plaintiff testified that reaching causes her arms to cramp and go numb.  AR 46.  Plaintiff also testified that her hands cramp up, and are not sturdy when she tries to use them.  AR 45.  The pain in her hands is constant.  AR 46.  Bending down or leaning forward makes her feel dizzy and hurts her stomach.  AR 45.  Standing or leaning forward also causes her legs to cramp.  AR 46.  Plaintiff's feet also go numb.  AR 46.

Plaintiff testified that she could sit for about five to ten minutes at a time.  AR 43.  She could stand for about ten minutes.  AR 43.  She could not walk a block without stopping to rest.  AR 43.  Plaintiff stated that she uses the cane to maintain her equilibrium and keep her from falling.  AR 46.

Plaintiff also testified she has neck pain, severe headaches, pain in her lower back and right eye.  AR 41.  She is in pain all the time, and nothing seems to help.  AR 42.  Plaintiff testified that sitting makes the pain worse.  AR 42.  The hemorrhage in her right eye makes vision in that eye blurry, and she has trouble focusing.  AR 42.

After the cancer surgery, Plaintiff testified that she has suffered from persistent, severe constipation.  AR 46.  She described it as a severe cramping pain that makes her feel like she needs to bend over.  AR 46.  The pain is so severe, she must lie down.  AR 46.

Plaintiff testified that she was being sent to a specialist "for the gastro," as well as for "neurosurgery," to see if there was anything that could be done to alleviate her back pain.  AR 47.  Plaintiff also testified that Dr. Cominos had prescribed a brace for both hands for Plaintiff's carpal tunnel which was "starting to help."  AR 47.

With respect to mental symptoms, Plaintiff testified that she had memory problems, difficulty paying attention and concentrating, and loses focus, which makes it difficult to follow information and instructions.  AR 43.  She also felt uncomfortable around other people.  AR 43.

Plaintiff described her typical day as permeated by pain, during which she sleeps, takes medication, and eats light meals.  AR 44.  Plaintiff does not sleep often at night.  AR 43.  She cannot cook, clean, or do laundry.  AR 44.  She occasionally goes grocery shopping with her sister.  AR 44.  She does not go outside to visit family or friends, though her girlfriend visits her.

8

1    AR 45.  She has no hobbies or pets, and does not use the computer because it is "too straining."

2    AR 45.

3         At the conclusion of Plaintiff's testimony, the ALJ asked Plaintiff's counsel if she had

4    obtained a medical source statement from Plaintiff's treating physician, Dr. Cominos.  AR 47.

5    Counsel stated that she had not, and stated that the September 12, 2012 progress notes Plaintiff

6    had placed into evidence that morning did not "really give any specifics" as to Plaintiff's

7    limitations with regard to walking, standing, lifting, or sitting.  AR 48.

8    **C.    Vocational Expert's Testimony**

9         Elizabeth Brown-Ramos testified as a vocational expert.  AR 48-54.  Brown-Ramos

10   testified that Plaintiff's past work as hospital admittance clerk was sedentary, but occasionally

11   heavy as she performed it, her position as administrative assistant was sedentary, her position as

12   an accounts representative was light, and her past work as a general clerk was light work.  AR 49-

13   50.  All of Plaintiff's past relevant work was semi-skilled or skilled.  AR 49-50.  However,

14   Brown-Ramos testified that there were no transferrable skills because Plaintiff was limited to light

15   work.  AR 49-50.

16        In response to a hypothetical question posed by the ALJ, Brown-Ramos testified that with

17   the ability to perform unskilled light work, limited to simple routine tasks; frequent handling,

18   fingering, feeling, and operation of bilateral foot and hand controls; occasional balancing,

19   stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; never climbing ladders,

20   ropes or scaffolds; work around hazards such as moving machinery and unprotected heights;

21   inability to operate a motor vehicle, Plaintiff could not perform to her past work as a hospital

22   admittance clerk, administrative assistant, accounts representative or general clerk.  AR 50-51.

23   However, Plaintiff could perform other types of work such as cashier II, counter clerk, and

24   conveyor belt bakery worker.  AR 51.

25        The ALJ next asked Brown-Ramos to assume the same above hypothetical with the

26   additional restriction of a sit/stand option (defined as sitting for five to ten minutes and then

27   standing for ten minutes).  AR 52-53.  In response, Brown-Ramos testified that there were no

28                                                    9

United States District Court
Northern District of California

1   available jobs.  AR 52-53.

2       Plaintiff's attorney then asked the vocational expert if the additional restriction of being

3   off-task for 50% of the workday on a consistent basis due to pain and concentration issues would

4   affect the vocational expert's analysis.  AR 53-54.  Brown-Ramos testified that with the addition

5   of this limitation, there would be no jobs available.  AR 53-54.

6       Plaintiff's counsel did not pose any additional hypotheticals with respect to Plaintiff's

7   range of motion limitations, or hypoesthesia of the hands, arms, and feet. Nor did counsel request

8   that the ALJ consider that Plaintiff had marked limitations in dealing appropriately with the

9   general public, per the opinion of Dr. Jacobs (AR 511).

10  **D.    The ALJ's Findings**

11      The regulations promulgated by the Commissioner of Social Security provide for a five-

12  step sequential analysis to determine whether a Social Security claimant is disabled.[3]  20 C.F.R. §

13  404.1520(a).  The sequential inquiry is terminated when "a question is answered affirmatively or

14  negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer*

15  *v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential

16  inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r*

17  *Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the

18  Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v.*

19  *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

20      The ALJ must first determine whether the claimant is performing "substantial gainful

21  activity," which would mandate that the claimant be found not disabled regardless of medical

22  condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ

23  determined that Plaintiff had not performed substantial gainful activity since May 20, 2010.  AR

24  18.

25

26  _____

27  [3] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d) (1)(A).

28

United States District Court
Northern District of California

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: neuropathy; colon cancer; depression; sleep apnea; and obesity. AR 18.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpart. P, Appendix. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 19-20.

With respect to Plaintiff's mental limitations, the ALJ found that "the severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.04." AR 19. The ALJ found that there was no marked restriction of Plaintiff's activities of daily living, and that any such limitations were "mild" as Plaintiff reported the ability to care for her own hygiene, go grocery shopping, talk on the phone, and watch television. AR 19. The ALJ also found no marked restriction in maintaining social functioning, or difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration. AR 19.

The ALJ noted that while Plaintiff had treated for colon cancer, she was now "completely cured," and her colonoscopy was normal. AR 21. The ALJ noted that Plaintiff's recent treatment notes from her treating physician, Dr. Cominos, showed severe colonic dysfunction. AR 21. However, the ALJ noted that Dr. Cominos "wrote that [Plaintiff] 'has been unable to work since 2007 due to multiplicity of her medical problems.'" AR 21. The ALJ noted that Dr. Cominos opined that Plaintiff's inability to work was due to a nerve problem following her 2010 surgery

11

which causes "unrelenting abdominal pain." AR 21.  The ALJ then focused on the finding that Plaintiff retained 5/5 motor strength in her upper extremities with a limited range of motion in the spine.  AR 21.  The ALJ then discounted Dr. Cominos' opinion that Plaintiff was restricted from "walking, standing, lifting or sitting for prolonged periods" because it was "inconsistent with her ultimate conclusion that [Plaintiff] is unable to work."  AR 21.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC determined by the ALJ.  AR 21-22.

In rejecting Plaintiff's credibility, the ALJ noted that although Plaintiff reported that she has been prescribed Prozac since 2011, she had not received any other mental health treatment. AR 21.  The ALJ further noted that Plaintiff reported she was prescribed a cane for ambulation but that there were no medical records showing the prescription, and Plaintiff's mother did not report that Plaintiff used a cane in her September 2011 report.  AR 22.  The ALJ also observed that a treatment note by a specialist Plaintiff saw one time listed her as a "retired" county worker.  AR 22.

The ALJ accorded great weight to the opinion of the state consultative examiner, Dr. Seu, who opined in October 2010 that Plaintiff's condition would not impose limitations for 12 continuous months, and that Plaintiff could stand and walk for 6 hours in a normal work day, and sit with no limitation.  AR 22.  Dr. Seu also found Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, as well as perform frequent manipulative activities. AR 22.  Dr. Seu found Plaintiff had not workplace environmental limitations.  AR 22.

The ALJ also accorded limited weight to the psychological consultative examiner's finding Plaintiff's ability to understand and remember simple, as well as some detailed instructions, was good.  AR 22.  The ALJ found that the opinion did not account for Plaintiff's subjective complaints of pain which would limit her abilities to simple routine tasks.  AR 22.

The ALJ also accorded great weight to the state medical consultant's finding that Plaintiff

United States District Court
Northern District of California

was capable of "light exertional work activity with occasional climbing of ramps and stairs and ladders, ropes and scaffolds, and bilateral frequent fingering and handling." AR 22.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform a narrowed range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). AR 20. Specifically, the ALJ found that Plaintiff was limited to light exertional work activity, including lifting and carrying 20 pounds occasionally and 10 pounds frequently, and standing and walking 6 hours and sitting for 6 hours in an 8-hour workday." AR 23. The ALJ further limited Plaintiff to "occasional climbing of ramps and stairs, occasional balancing, stopping, kneeling, crouching, crawling, and no climbing of ladders, ropes or scaffolds." AR 23. The ALJ found that Plaintiff was "capable of frequent handling, fingering, feeling and frequent operation of bilateral foot and hand controls." AR 23. However, the ALJ restricted Plaintiff from "hazards such as moving machinery and unprotected heights," or operation of a motor vehicle. AR 23. The ALJ also limited Plaintiff to simple, routine tasks. AR 23. 23.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. § 404.1520(a)(iv)(4), (f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined that Plaintiff could not perform her past relevant work as a hospital admitting clerk, administrative assistant/receptionist, claims representative, and general clerk. AR 23.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there

United States District Court
Northern District of California

1   are other jobs existing in significant numbers in the national economy which the claimant can

2   perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

3   404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of

4   a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404,

5   subpt. P, app. 2.  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here, based on

6   the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the

7   ALJ determined that although Plaintiff could no longer perform her past relevant work, there were

8   significant numbers of jobs in the national economy that Plaintiff could perform.  AR 24.

9   **E.      ALJ's Decision and Plaintiff's Appeal**

10          On September 28, 2012, the ALJ issued an unfavorable decision finding that Plaintiff was

11  not disabled.  AR 13-25.  This decision became final when the Appeals Council declined to review

12  it on December 19, 2014.  AR 2.  Having exhausted all administrative remedies, Plaintiff

13  commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On July 1, 2014,

14  Plaintiff filed the present Motion for Summary Judgment.  Dkt. No. 15.  On September 2, 2014,

15  the Commissioner filed a Cross-Motion for Summary Judgment.  Dkt. No. 19.

16                                           **LEGAL STANDARD**

17          This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

18  U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by

19  substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*,

20  246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a

21  scintilla but less than a preponderance" of evidence that "a reasonable person might accept as

22  adequate to support a conclusion."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

23  (quoting *Jamerson v. Chater*, 112 F.3d 1064. 1066 (9th Cir. 1997), *Flaten v. Sec'y of Health &*

24  *Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The court must consider the administrative

25  record as a whole, weighing the evidence that both supports and detracts from the ALJ's

26  conclusion.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  However, "where the

27  evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's

28                                                  14

United States District Court
Northern District of California

1   decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility,

2   resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the

3   ALJ. *Id.*

4       Additionally, the harmless error rule applies where substantial evidence otherwise supports

5   the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not

6   reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d

7   1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56

8   (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party

9   attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409

10   (2009).

**DISCUSSION**

12       In her Motion, Plaintiff raises a number of issues regarding the ALJ's decision: (1) the ALJ

13   failed to fully and fairly develop the record when she evaluated Plaintiff's impairments without

14   having all of the relevant medical records upon which she based her opinion; (2) the ALJ failed to

15   properly address the opinion of Plaintiff's treating physician, Dr. Cominos; (3) the ALJ

16   improperly determined Plaintiff to not be credible; and (4) the ALJ improperly rejected the

17   findings of the state agency reviewing physicians. Pl.'s Mot. at 4-7. The Court shall consider

18   each argument in turn.

19   **A.      The ALJ Failed to Properly Develop the  Record**

20       Plaintiff first argues that the ALJ failed in his duty to fully develop the record. *Id.* at 5.

21   Particularly, Plaintiff argues that the record contained none of her medical records between June

22   2011 and September 2012, despite the fact that the record established that Plaintiff underwent

23   extensive medical treatment during that time and listed new diagnoses. *Id.* at 6. Thus, Plaintiff

24   argues that the ALJ improperly adjudicated over a year of potential eligibility for benefits with no

25   evidentiary basis. *Id.*

26       In response, Defendant argues that the ALJ properly relied on counsel's representation that

27   there were no other medical records. Def.'s Mot. at 7. Defendant further argues that Plaintiff has

28

United States District Court
Northern District of California

15

1    not met her burden of establishing that additional records actually exist.  *Id.*

2         "Social Security proceedings are inquisitorial rather than adversarial."  *Sims v. Apfel*, 530

3    U.S. 103, 110-11 (2000).  "The ALJ in a social security case has an independent duty to fully and

4    fairly develop the record and to assure that the claimant's interests are considered."  *Tonapetyan v.*

5    *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th

6    Cir. 1996)) (internal quotation marks omitted).  This duty applies even where the claimant is

7    represented.  *Id.*  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to

8    allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate

9    inquiry.'"  *Id.* (quoting *Smolen*, 80 F.3d at 1288).

10        Here, the ALJ breached her duty to develop the record, because it was clear that the record

11   was insufficient to allow for proper evaluation of the evidence of Plaintiff's disability.  As a

12   threshold matter, the ALJ erred in relying on Plaintiff's counsel's representation that the record

13   was complete.  The ALJ was aware that Plaintiff was represented by a replacement attorney, who

14   appeared by telephone, on an emergency basis.  AR 226.  Although Plaintiff's counsel advised the

15   ALJ that she believed the record was complete (AR 34), it was clearly not so based on Plaintiff's

16   diagnoses, testimony, and recent medical records.  For instance, Plaintiff testified that she

17   "regularly" saw her primary care physician, as well as "a neurologist, gastroenterologist, physical

18   therapist, ophthalmologist, dermatologist, and oncologist."  AR 38.  Plaintiff also brought in her

19   most recent progress note from her treating physician, which listed past and upcoming

20   appointments with a gastroenterologist, as well as ongoing treatment for degenerative joint and

21   disc disease, including a surgical referral.  AR 503.  At least one doctor was named in these notes

22   as having provided specific testing and treatment for Plaintiff's severe colonic dysfunction.  AR

23   550 ("Saw Dr. Snape at CPMC (Sutter Pacific Medical Foundation).  He would like to perform

24   colonoscopy and perform rectal manometry.")

25        The progress notes also gave detailed findings regarding Plaintiff's physical capabilities

26   with respect to her ability to sit, stand, walk or lift.  AR 549-50.  The ALJ appears to have

27   discounted these findings due to lack of objective findings in the medical records.  AR 22.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Specifically, the ALJ noted that there were no records, and thus she could only conclude that

2  Plaintiff's colon cancer had been completely cured.  AR 22.

3          Plaintiff also represented that she used a cane, and that it was prescribed by her primary

4  care physician "in 2011."  AR 40, 46.  Although the ALJ did not make an adverse credibility

5  finding as to Plaintiff, she noted that Plaintiff's mother did not report Plaintiff used a cane in her

6  September 3, 2011 report on Plaintiff's abilities.  AR 22, 196.  However, there were still four

7  months left in 2011 during which Plaintiff could have been prescribed a cane.  The ALJ knew that

8  there were no medical records between June 2011 and September 2012.  AR 22.  The fact that

9  Plaintiff testified she "regularly" saw her physician, had not made any other conflicting statements

10  regarding her abilities, in conjunction with the fact that there were no medical records for over a

11  year, should have prompted the ALJ to further develop the record.

12          Defendant argues that even so, Plaintiff had the burden of showing that the additional

13  medical records actually existed, but failed to do so.  Def.'s Mot. at 7.  Defendant cites *Duenas v.*

14  *Shalala*, 34 F.3d 719 (9th Cir. 1994).  In *Duenas*, the plaintiff applied for retirement benefits, but

15  could not provide evidence to show that he had the required 37 quarters of coverage necessary to

16  be eligible for benefits.  34 F.3d at 721.  The plaintiff provided only "sketchy information" as to

17  his employment for the period of 1952 to 1954.  *Id.* at 722.  Upon denial of benefits, the plaintiff

18  argued that the ALJ breached the duty to develop the record.  *Id.*  The Ninth Circuit disagreed,

19  finding that where: (1) the applicant provided only sketchy information as to his employment; (2)

20  recalled neither for whom he worked nor what he had earned; and (3) made no request of the ALJ

21  to develop record, it was unclear what further ALJ could have done in absence of identification of

22  alleged employers.  *Id.*

23          *Duenas* is distinguishable because here, Plaintiff credibly testified that she regularly saw a

24  number of doctors (AR 38), and provided the ALJ with a recent progress note detailing her

25  diagnoses, limitations, upcoming and past appointments, and listing names of doctors who treated

26  Plaintiff between June 2011 and September 2012, but whose records were clearly not in evidence.

27  *See* AR 21 ("*Recent* treatment records from September 2012 show *continued treatment* for severe

28                                                    17

1   colonic dysfunction.") (emphasis added).  Thus, unlike the ALJ in *Duenas*, there was much that

2   the ALJ could have done.  *See Duenas*, 34 F.3d at 722 (the Secretary "diligently pursued the

3   information" when "such identifying material was provided").  Here, at a minimum, the ALJ could

4   have held the record open to obtain the missing records.  Moreover, given that Plaintiff's

5   consultative examination was completed while she was undergoing chemotherapy, and was

6   entirely based on the opinion that Plaintiff's symptoms would improve post-chemotherapy, the

7   fact that Plaintiff's most recent medical records established that she had been experiencing severe

8   complications from the chemotherapy should have prompted the ALJ to further develop the

9   record.

10      Further distinguishing this case from *Duenas*, Plaintiff was scheduled for further GI testing

11   with respect to that condition, for diagnostic testing regarding her lumbar spine, and for surgery

12   for her degenerative disc disease in her cervical spine.  AR 549-50.  Accordingly, the ALJ had

13   sufficient evidence of that medical records regarding Plaintiff's mobility and physical limitations

14   existed and could be obtained.

15      In sum, despite having credible information that Plaintiff had been regularly treating with a

16   number of doctors for her medical conditions, the ALJ did not attempt to obtain any of these

17   updated treatment records.  Under these circumstances, the ALJ failed her heightened duty to

18   further develop the record.  *See Sims,* 530 U.S. at 110-11 ("It is the ALJ's duty to investigate the

19   facts and develop the arguments both for and against granting benefits[.]").

20   **B.      The ALJ Erred In Her Evaluation of the Medical Opinion Evidence**

21      Plaintiff argues that the ALJ did not give appropriate weight to the opinion of Plaintiff's

22   treating physician, Dr. Cominos.  Pl.'s Mot. at 6.  Defendant contends that the ALJ properly

23   rejected Dr. Cominos' opinion based on substantial evidence of record.  Def.'s Mot. at 8.

24   Particularly, Defendant argues that the ALJ properly rejected Dr. Cominos' opinion because it

25   conflicted with: (1) the determination that Plaintiff was disabled beginning in 2007; and (2) the

26   determination that Plaintiff had normal motor strength in her upper extremities.  *Id*.  The Court

27   disagrees with Defendant.

28

United States District Court
Northern District of California

1     "As a general rule, more weight should be given to the opinion of a treating source than to

2   the opinion of doctors who do not treat the claimant ...." *Lester v. Chater*, 81 F.3d 821, 830 (9th

3   Cir. 1995).  This is so because a treating doctor is employed to cure and has a greater opportunity

4   to know and observe the patient as an individual.  *Smolen*, 80 F.3d at 1285; *Bates v. Sullivan*, 894

5   F.2d 1059, 1063 (9th Cir. 1990).  The uncontradicted opinion of a treating or examining physician

6   may be rejected only for clear and convincing reasons, while the opinion of a treating or

7   examining physician that is controverted by another doctor may be rejected only for specific and

8   legitimate reasons supported by substantial evidence in the record.  *Lester,* 81 F.3d at 830-31.

9   Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial

10   evidence that justifies the rejection of the opinion of either an examining physician or a treating

11   physician." *Id*. at 831.

12     Although a treating physician's opinion is generally entitled to significant weight, "'[t]he

13   ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is

14   brief, conclusory, and inadequately supported by clinical findings.'" *Chaudhry v. Astrue*, 688

15   F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228

16   (9th Cir. 2009)).  Greater weight should also be given to the "'opinion of a specialist about

17   medical issues related to his or her area of specialty.'"  *Benecke v. Barnhart*, 379 F.3d 587, 594

18   (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)).

19     Here, the ALJ failed to provide any clear and convincing reasons for rejecting Dr.

20   Cominos' opinion.  *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (citing *Matthews v.*

21   *Shalala,* 10 F.3d 678, 680 (9th Cir. 1993) (Although the ALJ "is not bound by the uncontroverted

22   opinions of the claimant's physicians on the ultimate issue of disability, ... [s]he cannot reject them

23   without presenting clear and convincing reasons for doing so." (internal quotation marks

24   omitted)).  Here, the ALJ gave the following reasons for rejecting Dr. Cominos' opinion:

25           Recent treatment records from September 2012 show continued
26           treatment for severe colonic dysfunction.  Her provider, Eve
            Cominos, M.D., wrote that the claimant has been "unable to work
            since 2007 due to multiplicity of her medical problems."  Dr.
27           Cominos found that this is likely due to a nerve problem following

28                                              19

United States District Court
Northern District of California

1  her 2010 surgery, which causes "unrelenting abdominal pain." She
2  wrote that this prevents the claimant from walking, standing, lifting
   or sitting for prolonged periods. She also wrote that claimant's
3  bilateral carpal tunnel syndrome precluded writing and keyboarding.
   At the same examination, Dr. Cominos found that the claimant had
4  5/5/ motor strength in the upper extremities, but limited range of
   motion in the spine. (16F/2). The final responsibility for deciding
5  issues such as whether as individual is "disabled" is reserved to the
   Commissioner. Social Security Ruling 96-5p. Moreover, the
6  opinion of Dr. Cominos restricting the claimant from walking,
   standing, lifting or sitting for prolonged periods is not consistent
   with her ultimate conclusion that claimant is unable to work.

7  AR 21.

8       None of the reasons given by the ALJ are clear and convincing evidence for rejection of a

9  treating physician's uncontradicted opinion. First, the ALJ appears to reject the opinion because

10  Dr. Cominos states that Plaintiff has been unable to work since 2007 due to "multiplicity of her

11  medical problems," which is inconsistent with the onset date. *Id.* 21. However, there is nothing in

12  the record supporting the conclusion that Dr. Cominos opined that Plaintiff was disabled since

13  2007. Taken in context, the next sentence states that Dr. Cominos believes Plaintiff's disability

14  "is likely due to a nerve problem following her 2010 surgery." *Id.* 21. This statement is

15  inconsistent with a finding of disability beginning in 2007, prior to Plaintiff's diagnosis and

16  treatment for colon cancer. Moreover, Plaintiff has never testified that she was disabled between

17  2007 and 2010. *See* AR 37 (Plaintiff testified that from 2007 to 2010 she was sick, but was still

18  looking for a job, until her colon cancer surgery.). Nor did Plaintiff submit any medical evidence

19  regarding her condition prior to her May 2010 onset date. Thus, it was improper for the ALJ to

20  discredit the entirety of Dr. Cominos' opinion, which was based on specific, objective medical

21  observations of Plaintiff and her abilities from the May 20, 2010 onset date, on this basis.

22       Second, the ALJ does not appear to consider all of Dr. Cominos' findings regarding

23  Plaintiff's condition. The ALJ notes that Dr. Cominos opined that Plaintiff's nerve problem,

24  "which causes unrelenting abdominal pain," prevents Plaintiff from "standing, lifting, or sitting for

25  prolonged periods." AR 21. The ALJ then goes on to note that Dr. Cominos found that Plaintiff's

26  "bilateral carpal tunnel syndrome precluded writing and keyboarding." AR 21. The ALJ next

27  appears to find significant that Dr. Cominos determined Plaintiff had "5/5 motor strength in the

28

upper extremities, but limited range of motion in the spine" at the same examination.  AR 21.  But the ALJ does not address her reason(s) for rejecting Dr. Cominos' opinion that Plaintiff's unrelenting abdominal pain is debilitating or that it has an effect on Plaintiff's ability to stand, sit, walk, or lift for prolonged periods.  The fact that Plaintiff has 5/5 motor strength in her upper extremities is not substantial evidence that her severe colonic dysfunction does not cause severe pain or affect her ability to tolerate positional exertion for 8 hours per day on a regular basis.

Last, the ALJ did not consider Dr. Cominos' detailed findings regarding Plaintiff's hypoesthesia in both of her hands, right arm, and feet, which was consistent with Plaintiff's claims that she could not use her hands without pain, and could not walk without a cane for balance.  AR 40, 46.

For these reasons, the Court finds that the ALJ did not set forth specific and legitimate reasons that are supported by substantial evidence in the record for rejecting the opinion of Plaintiff's treating physician.

**C.      Plaintiff's Credibility**

Plaintiff next argues that the ALJ improperly evaluated her credibility in the absence of a full evidentiary record.  Pl.'s Mot. at 6.  Defendant counters that the ALJ properly evaluated Plaintiff's credibility based on the fact that Plaintiff was "cured" of her colon cancer, the lack of a record of treatment between June 2011 and September 2012, and the fact that Plaintiff exaggerated her limitations by stating she was prescribed a cane though no prescription was in evidence or reported by her mother in September of 2011 on a third party function report form.  Def.'s Mot. at 11.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591

United States District Court
Northern District of California

1    (9th Cir. 2009).

2          Here, the ALJ found that Plaintiff's "medically determinable impairments could

3    reasonably be expected to cause the alleged symptoms," but that her "statements concerning the

4    intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

5    inconsistent" with the ALJ's functional capacity assessment.  AR 21-22.

6          The ALJ points to a chart note in the record in which a gastroenterologist who examined

7    Plaintiff one time referred to her as "a lovely retired county worker."  AR 402.  However, there is

8    no indication that Plaintiff was the source of this statement, or that Plaintiff had ever held herself

9    out to be anything but available for work before her May 20, 2010 onset date.  AR 22.  The ALJ

10   next found it significant that Plaintiff's colon cancer was completely cured, with evidence of

11   normal colonoscopy results, despite the fact that Plaintiff's most recent progress note from her

12   treating physician stated that she was still actively being treated for colonic dysfunction, DDD,

13   DJD, neuropathy, cubital and carpal tunnel syndrome.  AR 22.  The ALJ then relied on the lack of

14   medical records from June 2011 to September 2012 to discredit Plaintiff's account of the pain she

15   was experiencing.  AR 22.  As discussed above, this was improper in the face of substantial

16   evidence that such records did, in fact, exist.  Last, the ALJ appears to have discredited Plaintiff's

17   credibility due to the fact that she reported a prescription for a cane in 2011, but there was no

18   prescription in the medical records, and her mother did not report that Plaintiff used a cane in

19   September of 2011.  AR 22.  Once again, the ALJ's reliance on this fact to discount Plaintiff's

20   credibility was improper.  The medical records for 2011 were incomplete, there was substantial

21   evidence that such records existed, the current medical records supported Plaintiff's limitations

22   with respect to her balance and ability to use her hands, and the ALJ did not make a finding that

23   Plaintiff exaggerated any other symptoms.

24         Defendant frames the ALJ's findings as properly based on Plaintiff's failure to substantiate

25   treatment commensurate with the pain asserted.  Def.'s Mot. at 11 (citing *Orn v. Astrue*, 495 F.3d

26   625, 638 (9th Cir. 2007)).  However, the ALJ based the bulk of her "findings" as to Plaintiff's

27   credibility on an unattributed statement in a chart note about Plaintiff's employment status that

28

United States District Court
Northern District of California

22

conflicts with Plaintiff's own consistent statements.  AR 22.  Further, the ALJ improperly relied on the lack of medical records as evidence of lack of treatment, despite the fact that Plaintiff provided evidence that she had been treating regularly with a number of doctors for complications from chemotherapy.  AR 22.  The ALJ also appears to have improperly focused on the fact that Plaintiff's colon cancer was in remission, ignoring the evidence that Plaintiff's current complaints stemmed from complications from the surgery and chemotherapy.  AR 22.  Last, the ALJ improperly found that Plaintiff was not credible with respect to her claimed use of a cane because there was no prescription in the medical records.  AR 22.  However, as discussed above, because there was ample evidence that medical records for 2011 existed, which could have contained this prescription, this is not a clear and convincing reason for rejecting Plaintiff's credibility.

**D.     State Agency Findings**

Last, Plaintiff argues that the ALJ erred by failing to articulate her reasons for rejecting the findings of the state agency physicians with respect to Plaintiff's mental limitations due to her depressive disorder.  Pl.'s Mot. at 7.  Particularly, Plaintiff argues that the ALJ failed to give any weight to the opinion of reviewing state psychiatrist, Dr. Jacobs, that Plaintiff would have marked limitation in interacting appropriately with the general public, although she could get along with others, and adapt to the stress and changes of a simple work environment.  AR 511-12.  The ALJ did not include this limitation in her RFC.  However, Plaintiff does not argue that this limitation would have affected the ALJ's finding with respect to Plaintiff's mental disability.  Nor did Plaintiff ask the vocational expert to incorporate this limitation into her analysis of whether available jobs existed based on Plaintiff's RFC.  Moreover, at least one of the jobs identified by the VE did not involve dealing with the public.  AR 51 (conveyor belt bakery worker).  Because the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," with respect to Plaintiff's mental condition, there was no error.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary

United States District Court
Northern District of California

Judgment and remands the case for proceedings consistent with this Order.  The Court DENIES

Defendant's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**


Dated: October 3, 2014

_____

MARIA-ELENA JAMES
United States Magistrate Judge